# IN THE COURT OF APPEALS OF IOWA

No. 16-1348
Filed August 2, 2017

**COLLIN THOMPSON,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.

_____

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey J. Larson, Judge.

Collin Thompson appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Marti D. Nerenstone of Nerenstone Law, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VAITHESWARAN, Judge.**

Collin Thompson pled guilty to first-degree burglary, second-degree robbery, third-degree kidnapping, and two counts of aggravated assault while displaying a dangerous weapon, in connection with the robbery of a Council Bluffs mall. Two years later, he filed a postconviction relief application and amended application alleging a variety of errors. The district court denied the application on a stipulated record. Thompson appealed.

Thompson contends (1) his trial and/or postconviction attorney was ineffective in failing to (A) "provide him with all materials related to his case"; (B) challenge the factual basis for two counts of aggravated assault rather than a single count; (C) seek merger of the assault and second-degree robbery convictions; (D) challenge the factual basis for the kidnapping charge; (E) "demand[] [the] preparation" of a PSI report; and (F) have the postconviction relief hearing reported; (2) the district court abused its discretion in failing to "provide explicit and detailed reasons for the imposition of consecutive sentences"; and (3) cumulative errors mandate reversal.

## I. *Ineffective Assistance of Counsel*

To prevail on his ineffective assistance claims, Thompson must show (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the court concludes Thompson "has failed to establish either of these elements, [the court] need not address the remaining element." *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015).

*A.     Failure to Provide Materials*

Thompson contends his "constitutional rights were violated by the failure of defense counsel to provide him with all materials related to his case." Specifically, Thompson claims his trial attorney did not give him (1) a copy of additional minutes of testimony and (2) transcripts of two depositions. On our de novo review, we are convinced Thompson could not prove a breach or prejudice.

Thompson's trial attorney testified that it was the "standard practice" of her office to send or hand-deliver clients a copy of the original trial information and the additional minutes of testimony. As for the depositions, she noted Thompson "was present through all the depositions."

Thompson suggests his presence was insufficient. He asserts he needed the deposition transcripts to highlight "discrepancies between the sworn statements given during the depositions and the unsworn statements asserted in the various minutes of testimony." But as his trial attorney pointed out, "It is often the case that in deposition there are contradictions to what the Minutes of Testimony say." She elaborated, "[T]he reason we take depositions is ·because sometimes the minutes do not accurately·reflect what a witness will actually say occurred." She expressed little concern "about exactly the discrepancies in the minutes," focusing instead on the contents of the deposition. Given counsel's practice of providing and discussing the minutes with her clients as well as Thompson's attendance at the depositions, we conclude Thompson's trial attorney did not breach an essential duty.

The postconviction court also rejected Thompson's assertion that his attorney failed to give him the additional minutes on prejudice grounds, finding

Thompson's "'discrepancies' [were] often nothing more than a misrepresentation of the Trial Information, the deposition testimony, or both," and Thompson failed to show "how he would be better off at trial than under the plea agreement." We agree with this assessment. As Thompson's trial attorney stated, Thompson faced a life sentence on the State's original charge of first-degree kidnapping, the deposition testimony of a mall security guard who was assaulted and robbed supported a finding of guilt on this charge, and her goal was "to avoid life in prison for Mr. Thompson." We affirm the district court's denial of this claim.

B.      *Factual Basis for Two Counts of Aggravated Assault*

Thompson contends his trial attorney was ineffective in allowing him to plead guilty to two counts of aggravated assault while displaying a dangerous weapon and his postconviction attorney was ineffective in failing to raise this issue. He asserts, "Even if, arguably, [one] aggravated assault in this case was committed," "[t]wo assaults were non-existent."

Counsel breaches an essential duty if counsel permits a defendant to plead guilty and waive the right to file a motion in arrest of judgment where there is no factual basis to support the guilty plea. *See Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). In such cases, prejudice is presumed. *Id.*

According to the original minutes of testimony, the mall security guard was slated to testify that

> three male suspects wearing ski masks were inside the mall as she was making her rounds . . . . [S]he was pushed to the ground and struck her head, causing injury. She was then bound with duct tape and held at gunpoint by one suspect while the other two burglarized the stores.

The additional minutes stated the security guard would testify that

she felt the barrel of the gun to the back of her head and a male said, "If you move, I will shoot" and, "Shut up or I will shoot." Approximately forty-five minutes went by, which felt like a long time. Every time she tried to move to help with the cramps, the male would say, "If you move I will shoot." He kept saying it over and over again with more forcefulness and for emphasis he would shove or jab her in the back of her head with the shotgun.

The State asserts the first assault occurred when Thompson "shoved her down pretty hard, pushing her with his hand," and the second assault encompassed "the threats to shoot her." The quoted portions of the minutes support this assertion. *See State v. Velez*, 829 N.W.2d 572, 583-84 (Iowa 2013) ("Since either a single blow or a single series of blows caused each serious injury, we find that there were more than two completed acts, as [the victim] suffered at least two serious injuries."); *State v. Newman*, 326 N.W.2d 788, 793 (Iowa 1982) ("A defendant should not be allowed to repeatedly assault his victim and fall back on the argument his conduct constitutes but one crime."). We conclude Thompson's trial attorney did not breach an essential duty in failing to challenge the factual basis for two assaults. Accordingly, his postconviction attorney could not have been ineffective in failing to raise this issue.

*C.     Merger*

Thompson contends his assault charges "should have been considered as lesser included offenses of the robbery charge, and merged into it." *See* Iowa Code § 701.9 (2015) (stating "[n]o person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted"). He argues his trial attorney was ineffective in "allowing [him] to plead to . . . charges which are lesser included charges," and postconviction

counsel was ineffective in failing to raise the issue. Thompson cites *State v. Love*, 858 N.W.2d 721, 725 (Iowa 2015) in support of this argument. The court there held the defendant's convictions for assault with intent and willful injury should have merged, but its conclusion was based on "the unique circumstances presented by the serial instructions"—"the jury was never asked to do the fact-finding necessary to support two separate assaults." *Love*, 858 N.W.2d at 725. As a concurring opinion pointed out, the case was distinguishable from those "involv[ing] guilty pleas in which the only issue was whether there was a factual basis to conclude the defendant had committed multiple crimes." *See id.* at 726 (Mansfield, J., concurring specially) (citing *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014), and *Velez*, 829 N.W.2d at 577). And as the concurrence also stated, "[M]erger would not occur so long as substantial evidence supported a determination that two separate criminal acts had occurred." *Id.* at 728.

There was no merger issue here because the minutes of testimony established an independent factual basis for robbery and for two separate assaults. Specifically, the security guard was slated to testify

> she heard, "Let's go." And the gunman said, "What about her rings?" She tried to pull her hands under her and said, "No, No, No." The gunman grabbed her hands and started pulling her rings off; he took three rings. He was yanking her fingers really hard and was using two hands. He said, "We could cut her fingers off." He finally pulled the rings off. He then hit/shoved her on her upper left neck . . . . [S]he suffered an injury to her forehead and to her right temple.

We conclude neither Thompson's trial attorney nor his postconviction attorney breached an essential duty in failing to pursue merger of the assault convictions with the robbery conviction.

*D.*     *Factual Basis for Kidnapping Conviction*

Thompson essentially contends the record lacked a factual basis for the third-degree kidnapping charge, his trial attorney should not have allowed him to plead guilty to the charge, and his postconviction attorney was ineffective in failing to raise the issue. Thompson focuses on the confinement element of kidnapping. *See* Iowa Code § 710.1(4). "[C]onfinement or removal sufficient to support a charge of kidnapping may exist if the evidence shows the confinement or removal *substantially* increased the risk of harm, *significantly* lessened the risk of detection, or *significantly* facilitated the escape of the perpetrator." *State v. Robinson*, 859 N.W.2d 464, 478 (Iowa 2015). In Thompson's view, "This case involves a burglary and robbery of a mall. Although the security guard was detained, essentially [she] stumbled upon the intruders by accident," and her confinement "was incidental to the burglary."

To the contrary, the record reveals the guard's confinement substantially increased the risk of harm to her. The guard worked the 11:00 p.m. to 7:00 a.m. shift at the mall. As she was turning a corner on one of her rounds at 3:00 or 3:15 in the morning, three men assaulted her. As noted, one of the men stated, "[G]et down or I'll shoot." The guard's wrists were duct taped and she was "[f]orced[] down to the ground" with "the gun to the back of" her "head." Once she was on the ground, her legs and half her face were also duct taped. She did not have her radio to make a call, even if she could speak. The closest person in the mall was a night baker in a restaurant, a five or ten minute walk away. Based on these facts, we are persuaded there was a factual basis supporting the element of confinement. *See State v. Roche*, No. 14-2052, 2016 WL 1130291,

at *2 (Iowa Ct. App. Mar. 23, 2016) (stating a reasonable juror could have found confinement was more than incidental to sexual abuse where defendant used a knife, taped the victim's mouth, threatened to harm her child when she screamed, transferred her to the bedroom, and removed her cell phone); *State v. Ronnau*, No. 14-0787, 2016 WL 351314, at *5 (Iowa Ct. App. Jan. 27, 2016) (affirming conviction where defendant strangled woman until she passed out, transported her to the other side of the street near a bush, attempted to rip out her tongue when she tried screaming, and threatened to kill her); *State v. Norem*, No. 14-1524, 2016 WL 146237, at *5-6 (Iowa Ct. App. Jan. 13, 2016) (affirming conviction where defendant beat his wife, forced her into a car, drove her home, beat her again, and forced her to perform multiple sex acts); *State v. Mesenbrink*, No. 15-0054, 2015 WL 7075826, at *4 (Iowa Ct. App. Nov. 12, 2015) (affirming conviction where defendant grabbed  woman, held her at knifepoint, repeatedly told her he had to kill her, demanded she shut-up, and pushed her between the bed and the wall); *State v. Schildberg*, No. 14-1581, 2015 WL 4642503, at *1-2 (Iowa Ct. App. Aug. 5, 2015) (affirming conviction where defendant pulled his girlfriend out of bed by her hair, broke one of her ribs, choked her with his legs around her neck, forced her to have sex, made her go with him to a gas station so she would not escape, kept her phone and purse away from her, and did not allow her to leave the residence when they returned).  Neither his trial attorney nor his postconviction attorney breached an essential duty in failing to challenge the factual basis for the kidnapping charge.

*E.      Failure to Demand Preparation of PSI Report*

Thompson challenges his trial attorney's "failure to demand the preparation of a presentence investigation report, in accordance with Iowa Code section 901.2(2)(b), prior to sentencing." The Iowa Supreme Court has interpreted this provision to mean that a court cannot waive the preparation of a PSI report but can waive its use. *State v. Thompson*, 494 N.W.2d 239, 241 (Iowa 1992).

Thompson requested the preparation of a PSI report, and the district court ordered its preparation. At the plea hearing, Thompson asked to proceed with immediate sentencing. His attorney stated,

> Your Honor, the—we have ordered a Presentence Investigation, and it is going to be prepared for purposes of use in the Department of Corrections, but he does wish to waive it for use at sentencing today.

The district court asked Thompson if he agreed. Thompson responded, "Yes, Your Honor." We conclude Thompson's trial attorney did not breach an essential duty in her handling of the PSI report. *See id.* (observing the defendant was aware the PSI report could be considered by the court for sentencing purposes but he "did not want to wait for the report to be completed and chose immediate sentencing").

*F.      Failure to Make Record of PCR Proceedings*

Thompson challenges his postconviction attorney's failure to "make sure that the proceedings were reported." *See* Iowa Code § 822.7 ("A record of the proceedings shall be made and preserved."). However, the parties agreed to submit the matter to the court "by and through trial briefs and a stipulated record,"

including "the record in [Thompson's] underlying criminal case" and certain depositions. This court has stated section 822.7 "applies to evidentiary hearings." *Dorris v. State*, No. 16-0488, 2017 WL 104948, at *2 (Iowa Ct. App. Jan. 11, 2017). Because the parties stipulated to the evidence that would be considered, we conclude section 822.7 was not violated.

## II. *Reasons for Consecutive Sentences*

Thompson contends the district court abused its discretion in failing to "provide explicit and detailed reasons for the imposition of consecutive sentences." He argues he preserved error on this issue "by the filing of the applications for postconviction relief." The simple act of filing the application is insufficient to preserve error. The issue ordinarily must be raised and decided by the district court before we will consider it on appeal. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

We recognize an exception to our error-preservation rules for challenges to illegal sentences. "The court may correct an illegal sentence at any time." *See* Iowa R. Crim. P. 2.24(5)(a). Thompson's assertion that the sentencing court failed to articulate adequate reasons for the imposition of consecutive sentences does not amount to a challenge to the legality of his sentence. *See Tindell v. State*, 629 N.W.2d 357, 360 (Iowa 2001) ("[A] claim of procedural error is not a claim of illegal sentence, and therefore, it is precluded by our normal error-preservation rules."); *State v. Wilson*, 294 N.W.2d 824, 824-25 (Iowa 1980) (noting no statement of reasons was given for sentence but concluding rule allowing illegal sentences to be raised at any time did not include challenge to this procedural defect); *State v. Means*, No. 11-0492, 2012 WL 3195975, at *3

(Iowa Ct. App. Aug. 8, 2012) (stating a claim that sentencing court failed to articulate reasons for consecutive sentences was a challenge to how the sentence was imposed rather than a challenge to the actual sentence and could not be raised at any time); *see also State v. Bruegger*, 773 N.W.2d 862, 870-71 (Iowa 2009) (broadening the definition of an "illegal sentence" to encompass "claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional" but citing list of sentencing challenges still subject to error-preservation rules).  We conclude Thompson failed to preserve error.

### III.     *Structural Error / Cumulative Prejudice*

Thompson contends his "defense counsel's performance was so deficient as to cause structural error," and the combined prejudice of counsels' errors denied him a fair trial.  *See*, *e.g.*, *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012) (stating reviewing courts "should look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test").  We discern no structural error and, having found no individual errors, we decline to find cumulative error.

We affirm the denial of Thompson's postconviction relief application.

**AFFIRMED.**